695 A.2d 163

**Samuel T. GINDES**

v.

**W. Wajeed KHAN et ux.**

**No. 85, Sept. Term, 1996.**

Court of Appeals of Maryland.

June 18, 1997.

**144**

Bruce L. Marcus (M. Celeste Bruce, Marcus & Bonsib, on brief), Greenbelt, for appellant.

M. Evelyn Spurgin (Michael P. Darrow, Hillman, Brown & Darrow, P.A., on brief), Annapolis, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RODOWSKY, Judge.

Based upon the appellant's brief to the Court of Special Appeals in this case, we issued a "bypass" writ of certiorari on our own motion to determine whether the trial court had erroneously implied a civil cause of action into the criminal penalties provided by Maryland Code (1974, 1988 Repl.Vol.), § 10–305 of the Real Property Article (RP), dealing with required escrows for purchasers' deposits in certain real estate transactions. After full briefing and argument, it is now clear that:

1. There is no final judgment;

2. The statutory construction issue on which we granted certiorari is not presented by the record (and if presented would have no prospective public importance); and

3. The appellant has not preserved for appellate review the error of law on which the judgment is based.

We begin by presenting the statutes involved in the problem. The escrow requirements involved here are now found in Md.Code (1974, 1996 Repl.Vol.), RP § 10–301(a) and (b). In relevant part they provide:

"(a) *When required.*—If, in connection with the sale and purchase of a new single-family residential unit which is not completed at the time of contracting the sale, the vendor or builder obligates the purchaser to pay and the vendor or builder receives any sum of money before completion of the unit and grant of the realty to the purchaser, the builder or vendor shall:

"(1) Deposit or hold the sum in an escrow account segregated from all other funds of the vendor or builder to assure the return of the sum to the purchaser in the event the purchaser becomes entitled to a return of the sum;

. . . .

"(b) *Maintenance until certain events.*—The vendor or builder shall maintain the escrow account ... until the happening of the earlier of:

"(1) The granting of a deed to the property on which the residential unit is located to the purchaser;

"(2) The return of the sum of money to the purchaser; or

"(3) The forfeiture of the sum by the purchaser, under the terms of the contract of sale relating to the purchase of the residential unit."

Section 10–301 is part of Subtitle 3, entitled, "Deposits on New Homes," of Title 10 of the Real Property Article. Prior to October 1, 1995, the effective date of Chapter 569 of the Acts of 1995, RP § 10–305, part of that same subtitle, read, in relevant part, as follows:

"If a person fails to ... hold sums of money in an escrow account as required under this subtitle, he is guilty of a misdemeanor, and, on conviction, is subject to a fine not exceeding $500, or imprisonment not exceeding six months, or both. Any officer, director, or employee of a corporation, who knowingly participates in any act or omission which is part of the violation, is subject to the penalties of this subsection."

We shall refer to the above-quoted statute as former § 10–305.

The 1995 legislation substantially amended former § 10–305. Md.Code (1974, 1996 Repl.Vol.), RP § 10–305 now reads:

"(a) *Penalties.*—If a person willfully and knowingly fails to ... hold sums of money in an escrow account as required under this subtitle, the person is guilty of a felony and, on conviction, shall make restitution to the purchaser as determined by the court, and be subject to a fine not exceeding $10,000 or imprisonment not exceeding 15 years or both.

"(b) *Unfair or deceptive trade practices.*—In addition to any other penalty or relief afforded by law or equity, any conduct that fails to comply with this subtitle is an unfair or deceptive trade practice within the meaning of Title 13 of the Commercial Law Article and is subject to all of the

provisions of that title [with one exception not relevant here].

"(c) *Liability of corporate officers, directors, or employees.*—Any officer, director, or employee of a corporation, who knowingly participates in any act or omission which is part of the violation, is subject to the penalties of this subsection."

We shall refer to the above-quoted statute as current § 10–305.

The 1996 Replacement Volume for the Real Property Article of the Maryland Code was published in January 1996. Its revisions encompassed enactments of the 1995 session of the General Assembly, including current § 10–305. The publisher parenthetically set forth after the statutory text the code and session law citations to the prior versions of current § 10–305. The publisher also stated in a note following current § 10–305 that Chapter 569 of the Acts of 1995 "rewrote the section."

The instant matter involves a real estate contract initially entered into on April 16, 1993. Suit was filed by the purchaser in June 1994. At the non-jury trial of the case in January 1996 all concerned, *i.e.*, counsel for both parties and the trial court, treated the claim on which judgment ultimately was entered against the appellant as governed by current § 10–305 when, in law, it was governed by former § 10–305.

This action was brought by the appellees, W. Wajeed Khan and B. Zorina Khan, husband and wife (the Khans). The Khans sued G.S.G. Development, Inc., a Maryland corporation (G.S.G.Inc.), and Samuel T. Gindes (Gindes), who is the appellant in this case. The trial court found that the Khans had entered into a contract with G.S.G. Inc. for the purchase of a lot with a new residence thereon that was to be constructed by G.S.G. Inc. A vice-president of G.S.G. Inc., Brian Gallagher, signed the original contract on behalf of G.S.G. Inc. in which the price was $785,000. The Khans made several payments totalling $120,000 to G.S.G. Inc. as a good faith deposit toward the contract price.

The trial court also found that Gindes is the sole stockholder, president, and chief operating officer of G.S.G. Inc. The monies paid by the Khans to G.S.G. Inc. were deposited into its general operating account on which Gindes was sole signatory. None of the monies were held in an escrow account, but were used in the course of the business of G.S.G. Inc. Those expenditures were directly or indirectly authorized by Gindes.

On May 3, 1995, G.S.G. Inc. filed a petition under Chapter 7 of the United States Bankruptcy Code. Counsel for G.S.G. Inc. filed a suggestion of that bankruptcy in the action now before us, thereby alerting all interested persons to the operation of the automatic stay of proceedings against G.S.G. Inc. effected under the Bankruptcy Code. The property that the Khans had contracted to purchase was sold at a foreclosure sale under the mortgage placed on the property by G.S.G. Inc. We are advised that the Khans were the purchasers at the foreclosure sale.

The subject action proceeded against Gindes on the claims alleged against him in Counts III through VIII of the eight-count complaint. Count III alleged a failure by Gindes to maintain the escrow required of the "vendor or builder" by RP §§ 10–301 and 10–305. The Khans alleged conversion by Gindes of the deposit in Count IV. Counts V and VI averred theft by misrepresentation and misappropriation of funds held in trust. Count VII sounded in negligent misrepresentation. Alleged violations of the Consumer Protection Act (CPA), Md.Code (1975, 1990 Repl.Vol.), §§ 13–101 *et seq.* of the Commercial Law Article (CL), formed the basis for Count VIII. The CPA authorizes a private action for damages which, if successful, may carry counsel fees as well. CL § 13–408(a) and (b).

At the conclusion of the Khans' case, Gindes moved for judgment and orally argued fully in support thereof. In that argument Gindes asked the court to consider Counts III and VIII together. Both the court and Gindes discussed the merits of the motion in reference to current § 10–305. During the Khans' argument, they agreed with the court that they

would have to "pierce the corporate veil" in order to recover under RP § 10–301. When the Khans referred to definitions under the CPA in support of their recovery under Count VIII, the court observed that those definitions were not material because the relevant provisions of the Real Property Article made their violation a violation of the CPA.

The court granted the motion by Gindes for judgment on Counts V, VI, and VIII. In denying the motion as to Count III, the court observed that RP § 10–301 "[i]n essence ... converts the Real Property section into an unfair and deceptive trade practice to the extent there is a civil remedy." The court also found evidence sufficient to support the conversion and negligent misrepresentation claims, Counts IV and VII respectively. In ruling that Count VIII could not proceed, the court observed that it was "unclear ... whether or not Count [VIII] is a separate action from Count [III], from that which is brought under the Real Property Article," but the court concluded it was "not properly brought or not properly supportable by the evidence."

At the conclusion of all of the evidence, in lieu of oral argument, the court requested that briefs be filed simultaneously. The court advised counsel that "an essential point in this case" was the alleged liability of Gindes under RP § 10–305(c), referring to the provision as "a mandated obligation by the State" and observing that "intention or goodwill or knowledge has nothing to do with it."

The parties' post-trial briefs presented arguments on Count III in terms of current § 10–305.

In a written opinion the circuit court entered judgment in favor of the Khans against Gindes for $143,500, representing the unrefunded deposit of $120,000 plus counsel fees of $23,500, awarded under CL § 13–408(b). The judgment was predicated on current § 10–305. The court said:

"Section 10–305 makes it the responsibility of any officer, director, or employee of a corporation, who knowingly participates in any act [or] omission which is part of the violation, is subject to the penalties of the subsection. Sec-

tion (b) of 10–305 engrafts the statutory protections of Title 13 of the Commercial Law Article . . . into the Real Property statutory scheme."

In its opinion the circuit court held for Gindes on the claim of conversion. The court found that Gindes "presents a logical and normal explanation of reimbursement of expenses for the writing of the limited sums from the operating account to Gindes' use." In holding for Gindes on the count alleging negligent misrepresentation, the court said:

"More importantly, except for the final transaction involving Addendum 'C', Gindes and the [Khans] had only the slightest of contact. The court does not find credible the testimony of Wajeed Khan that he understood that the monies would be held in escrow."

Gindes appealed to the Court of Special Appeals, without having filed any post-judgment motions in the circuit court. In his brief to that court, Gindes argued that the circuit court had "erred in awarding civil damages . . . for finding a violation of the Real Property Article Section 10–305, said statute providing criminal penalties." We granted certiorari prior to consideration of the matter by the Court of Special Appeals. Gindes's brief to the intermediate appellate court thereby became his brief in this Court.

■ There is no final judgment in this case. The stay of proceedings against G.S.G. Inc. is not the equivalent of a dismissal of that defendant from the action. *Starfish Condominium Ass'n v. Yorkridge Serv. Corp.*, 292 Md. 557, 440 A.2d 373 (1982). The Khans never dismissed G.S.G. Inc. from the action after that debtor's bankruptcy filing, and Gindes never obtained an order from the circuit court under Maryland Rule 2–602 certifying as final the judgment against that party alone.

After the decision in *Starfish Condominium*, this Court adopted Maryland Rule 8–602(e)(1), under which "the appellate court may, as it finds appropriate, . . . (C) enter a final judgment on its own initiative" in cases where "the lower court had discretion to direct the entry of a final judgment pursuant

to Rule 2–602(b)." We shall not exercise that discretionary power under Rule 8–602(e)(1) in the matter before us.

■ It is clear that the issue which Gindes seeks to present is not in the case. The circuit court never implied a remedy under former § 10–305. Rather, the trial court, with the active encouragement of the parties in their post-trial briefs, applied to the transaction a non-retroactive statute which was not in effect when the transaction occurred. Gindes never objected or otherwise alerted the trial court to the error.

■ If we were to certify the judgment against Gindes as final under Rule 8–602(e), we would have to address the lack of preservation. Maryland Rule 8–131 provides:

"Ordinarily, the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

Rule 8–131(a) is not absolute; it is the ordinary rule. Under this rule the Court has discretion, which we have exercised on occasion, to consider an issue raised for the first time on appeal. *Crown Oil & Wax Co. v. Glen Constr. Co.*, 320 Md. 546, 561–62, 578 A.2d 1184, 1191 (1990). Thus, even if we were to certify the judgment as final, we would still have to decide whether to hold Gindes to the ordinary rule or to address the admitted error on which the judgment is actually based.

The factual record in this case is quite confused, and the trial court performed a commendable service in making findings of fact that are not challenged on this appeal. Nevertheless, within the framework of the trial court's fact-findings, we are unable to determine how the trial court would have decided the Khans' claim on Count III of their complaint if the trial court had been deprived of the assistance of current § 10–305(c) in piercing the corporate veil. The difference between former and current § 10–305 may or may not be result-altering under all of the facts known to the circuit court,

including any facts that need not have been expressed in a written opinion dealing with current § 10–305.

Another effect of our declining to certify the judgment against Gindes as final is that all of the rulings on all of the counts of the Khans' complaint remain interlocutory. *Gertz v. Anne Arundel County*, 339 Md. 261, 272–73, 661 A.2d 1157, 1163, *cert. denied*, —— U.S. ——, 116 S.Ct. 522, 133 L.Ed.2d 429 (1995). Thus, the circuit court will be free, when considering the application of former § 10–305, to reconsider, if it so chooses, the relationship of Count III to the other counts of the complaint. Dismissal of the appeal also leaves the circuit court free to make its decision using only the present record or by taking additional testimony, in its discretion.

Our decision not to certify under Rule 8–602(e)(1) does not operate unfairly against the Khans. As judgment holders the Khans could have moved for certification of the judgment against Gindes as final under Maryland Rule 2–602, or they could have voluntarily dismissed as to G.S.G. Inc. Even then, this Court, in its discretion, could have remanded an appeal by Gindes under Rule 8–604(d)(1), because the substantial merits of the appeal would not be determined by affirming, reversing, or modifying the judgment. Nor is the failure to bring the governing law to the attention of the trial court exclusively a failure on the part of counsel for Gindes. If trial counsel for the Khans had been alert to the problem, that member of the bar would have been professionally obliged to disclose the applicability of former § 10–305 to the court.[1] "A lawyer ... must recognize the existence of pertinent legal authorities." Comment to Rule 3.3, Maryland Lawyers' Rules of Professional Conduct.

For these reasons, we shall not certify as a final judgment the judgment entered only against the defendant Gindes.

**APPEAL DISMISSED. COSTS TO ABIDE THE RESULT.**

---

1. Different attorneys from the same law firm appeared for the Khans at trial and on appeal.